# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>CHARLES TRIPLETT | No. 20 CR 00665<br><br>Judge Mary M. Rowland |

## MEMORANDUM OPINION & ORDER

Chicago Police Department officers recovered a handgun with a large-capacity magazine from Charles Triplett's ("Triplett's") waistband. He was charged with being a felon in possession of a firearm under 18 U.S.C. § 922(g). Triplett argues that these officers violated his Fourth Amendment right to be free from unreasonable searches and seizures. (Dkt. 12). His motion to suppress the handgun is denied for the following reasons.

## BACKGROUND

At approximately 8:35 PM on July 30, 2019, Officers Goss, Klaus, Sweezer, and Zeman were patrolling the West Side of Chicago in an unmarked vehicle.[1] As they turned the corner from North Kilpatrick Avenue onto West End Avenue, they observed three men standing on the sidewalk in front of the second house from the corner. One of those men was Triplett. Officer Sweezer observed what he later described as an "extended magazine" protruding from Triplett's waistband. As the

---

[1] The facts of this case are undisputed unless otherwise noted.

car was turning the corner or shortly after it completed the turn, Triplett turned away and walked towards his front porch. Officer Sweezer told the officer driving the vehicle to stop, and he exited the vehicle to follow Triplett.

Triplett reached the porch just ahead of Officer Sweezer and sat in a chair. Officer Sweezer raised him from his seat, handcuffed him, and patted him down. Officer Klaus then recovered a handgun equipped with a large-capacity magazine from his waistband. At that point, Officer Sweezer asked Triplett whether he had a permit to carry a concealed weapon or an FOID card, and Triplett responded that he did not.

Triplett argues that no part of the weapon could have been visible to Officer Sweezer because (1) it was too dark to observe a weapon; (2) Sweezer was about 45 feet away from Triplett in a moving vehicle; and (3) the weapon was covered by Triplett's shirt. Triplett also finds Officer Sweezer not credible because he admittedly did not tell his fellow officers he saw a firearm until he patted Triplett down. He just said "stop," exited the vehicle, and followed Triplett.[2] (Transcript of Suppression Hearing, 45:1).

## ANALYSIS

The Constitution permits a "limited intrusion into an individual's privacy" if police officers have "reasonable suspicion to believe criminal activity is afoot." *United*

---

[2] Triplett suggests instead that the officers were executing a "jump-out" maneuver—attempting to startle bystanders into fleeing and pursuing those who do, in order to justify otherwise suspicionless stops. In *Doornbos v. City of Chicago*, 868 F.3d 572, 586 (7th Cir. 2017) the Seventh Circuit provides a thorough description of this tactic. The Court has considered these arguments, but credits Officer Sweezer's testimony that he observed an extended magazine.

2

*States v. Richmond*, 924 F.3d 404, 411 (*citing Terry v. Ohio*, 392 U.S. 1, 30 (1968)). Officers must be able to "point to specific and articulable facts" when justifying such an intrusion, *Terry*, 392 U.S. at 21. Reasonable suspicion is "more than a hunch" but less than probable cause, and significantly less than a preponderance of the evidence. *See Illinois v. Wardlow*, 528 U.S. 119, 123 (2000). When justifying a frisk, an officer must also point to "articulable facts that would establish the separate and specific condition that the detainee has a weapon or poses some danger." *United States v. Williams*, 731 F.3d 678 (2013) (*citing Terry*, 392 U.S. at 27).

Because these are two different standards, courts are sometimes forced to perform two separate reasonable suspicion analyses. *See, for example, United States v. Williams*, 731 F.3d 678 (7th Cir. 2013). Here, the stop and the frisk were essentially simultaneous. Triplett was stopped when he sat down on the porch and raised his hands as Officer Sweezer approached him. Up until that point he had been walking away. *See United States v. Mays*, 819 F.3d 951, 956 (7th Cir. 2016) ("a fleeing suspect—even one who is confronted with an obvious show of authority—is not seized until his freedom of movement is terminated by intentional application of physical force or by the suspect's submission to the asserted authority.") (quotation and citation omitted). As soon as Triplett raised his hands, Officer Sweezer pulled him into a standing position, handcuffed him, and patted him down in a matter of seconds.

Officer Sweezer testified that, while on patrol sitting in the rear passenger seat with the window down, he saw "one individual with an extended magazine sticking from his waistband." (Transcript, 32:19). His testimony, which the Court finds

3

credible, provided both the reasonable suspicion that a crime was being committed, justifying the stop, and the reasonable suspicion that Triplett was armed, justifying the frisk.[3] It is illegal for anyone to carry or possess a large-capacity magazine in Cook County, regardless of whether they are otherwise permitted to carry a handgun. *See* Cook County, Ill. Code § 54-212(a).[4] Moreover, Officer Sweezer credibly testified that he believed the magazine was clipped into a handgun when he observed it, making it, in effect, part of the weapon. Therefore, it was also reasonable for Officer Sweezer to suspect that Triplett was violating state law by exposing part of a handgun while standing on a public sidewalk. See 430 ILCS 66/5 (allowing permit-holders to carry concealed weapons and defining "concealed firearm" as "a loaded or unloaded handgun carried on or about a person completely or mostly concealed from view of the public or on or about a person within a vehicle."). Licensed handgun owners cannot carry their weapons openly. *See United States v. Swinney*, 463 F. Supp. 3d 851, 857 (N.D. Ill. 2020) (Chang, J.) (holding that, "under Illinois law, even if [defendant] had possessed a concealed carry permit (which [defendant] does not argue that he did), it would have been illegal for him to brandish the gun on a public

---

[3] Triplett argued in the suppression hearing that Officer Sweezer could not have been certain of the capacity of the magazine because he couldn't see its full length. This may be true, but reasonable suspicion doesn't require certainty. Officer Sweezer testified that based on what he could see, the magazine was "extended from a regular magazine." (Transcript at 51:15).

[4] The Cook County Code provides that it is "unlawful for any person to [. . .] acquire, carry or possess any assault weapon or large capacity magazine in Cook County." Cook County, Ill. Code § 54-212(a). The Code defines "large-capacity magazine" as "any ammunition feeding device with the capacity to accept more than ten rounds." Cook County, Ill. Code § 54-211.

sidewalk.").[5] When Officer Sweezer observed an extended magazine in Triplett's waistband, he had a reasonable suspicion that two laws were being violated.[6]

In addition to observing an extended magazine, Officer Sweezer testified that he saw Triplett "looking our direction, make movements towards his waistband. And look around and walk towards the front porch." (Transcript, 36:3–5). The Court takes no position on whether Triplett's evasive movements would have given rise to reasonable suspicion on their own. *See, for example, United States v. Williams*, 731 F.3d 678 (7th Cir. 2013); *United States v. Howell*, 958 F.3d 589 (7th Cir. 2020); *United States v. King*, 439 F. Supp. 3d 1051 (N.D. Ill. 2020). But in light of the fact that Officer Sweezer also observed an extended magazine at Triplett's waistband, this evasive behavior could have suggested that a violation of the law, as described above, was "afoot". *See United States v. Richmond*, 924 F.3d 404, 409 (7th Cir. 2019) ("chang[ing] direction, quicken[ing] pace" and hiding an object suspected of being a weapon was "not typical of a concealed carry license holder" and contributed to an officer's reasonable suspicion that the detainee was carrying a firearm illegally).

---

[5] These circumstances distinguish the case from *United States v. Watson*, 900 F.3d 892, 893 (7th Cir. 2018). There, the Seventh Circuit found that an anonymous tip describing men with guns did not create reasonable suspicion because the tip was unreliable, and "did not describe a likely emergency or crime—[but] reported gun possession, which [was] lawful." *Id.* at 893.

[6] The Government elicited testimony from several witnesses describing this neighborhood as a "high crime area," (Transcript, 6:13, 26:14), but Officer Sweezer did not testify that he relied on this fact when he decided to follow Triplett. Therefore, the Court did not consider it in its reasonable suspicion analysis. The Seventh Circuit has cautioned that "[p]eople who live in rough neighborhoods [. . .] should not be subject to more intrusive police practices than are those from wealthy neighborhoods" and the Court is mindful of this consideration. *United States v. Watson*, 900 F.3d 892, 897 (7th Cir. 2018). Likewise, the Court did not need to consider passing testimony that there had been shootings on this particular block at some point in the recent past, or that crime rates increased in the summer.

## **CONCLUSION**

For the reasons detailed above, the motion to suppress is denied. (Dkt. 12). A status hearing has been set for January 27, 2021.

E N T E R:

Dated: December 11, 2020

_____
MARY M. ROWLAND
United States District Judge